**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: CHANGE HEALTHCARE, INC., CUSTOMER DATA SECURITY BREACH LITIGATION.** | **MDL No. 3108** |

**REPLY IN SUPPORT OF DEFENDANT HEALTHFIRST'S**
**MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-1)**

Defendant Healthfirst, Inc. ("Healthfirst") submits this reply in further support of its motion to vacate Conditional Transfer Order 1 ("CTO-1") as to Count VI of the *Lemke* Action.[1] As set forth more fully below, in their oppositions to Healthfirst's motion, the *Lemke* Plaintiffs and Change Healthcare overstate the factual and legal overlap between Count VI of the *Lemke* Action and the MDL and the risk of overlapping discovery and competing decisions on any potential motions. Indeed, the inclusion of Healthfirst in the MDL as a representative of an entirely new class of defendant-insurers portends a vast expansion of the claims, issues, defendants, and discovery in the current multidistrict litigation, rendering Count VI inappropriate for consolidation. Given these issues, and that centralization under Section 1407 should be a last resort, Healthfirst urges the Panel to sever and remand Count VI of the *Lemke* Action to the district court.

## ARGUMENT

### I. THE MDL SHOULD NOT INCLUDE CLAIMS WITH MINIMAL FACTUAL AND LEGAL OVERLAP AGAINST OTHERWISE ABSENT DEFENDANTS

The *Lemke* Plaintiffs and Change Healthcare overstate the factual overlap between the MDL and Count VI of the *Lemke* Action. The *Lemke* Plaintiffs allege that Healthfirst, and other

[1] All abbreviations not defined herein are the same as those in Healthfirst's opening memorandum of law. (Healthfirst Br., ECF No. 172)

insurance companies, wrongfully denied claims as "stale" that were only submitted late as a result of the interruption in service suffered from the Change Healthcare cyberattack (hereafter the "Data Breach"). (*Lemke* SAC ¶ 101.) In Count VI, the *Lemke* Plaintiffs bring claims against Healthfirst and the putative defendant insurer-class for the "unjust practice of not paying claims that were received after their respective 'timely filing' deadlines due to the Data Breach." (*Lemke* SAC at 2.)

Count VI of the *Lemke* Action represents more than a "slightly different legal theory" (Change Healthcare Opp'n, ECF No. 182 at 7). Neither the *Lemke* Plaintiffs nor Change Healthcare acknowledge that, for Count VI, the Data Breach is mere background. For any insurance company defendants facing such a claim, potential liability turns on a central issue: what, if any, obligation do insurers have to accept provider billings that were untimely due to factors beyond their control. In effect, Count VI equates the February 2024 Data Breach to a sort of *force majeure* event. Without a legal basis for *force majeure* cited in the *Lemke* SAC, that theory will turn on insurance companies' contracts with individual providers, any applicable state laws on timely healthcare billings, and potentially on the communications, assurances or disclaimers (if any) between those insurers and individual providers about the service interruption. These are the central issues of Count VI, and they would otherwise be absent from this MDL.

Change Healthcare and the *Lemke* Plaintiffs rely on the principle that complete identity of legal and factual issues is not required for MDL consolidation; however, Count VI of the *Lemke* Action asserts more than mere "additional facts or differing legal theories…." (*Lemke* Pl.'s Opp'n, ECF No. 180 at 5 (quoting *In re FTX Cryptocurrency Exch. Collapse Litig.*, No. MDL 3076, 2024 WL 1636729, at *1 (J.P.M.L. Apr. 15, 2024)). The only "wrong" alleged against the insurers is the routine denial of a facially untimely claim. The notion that every health insurance company

defending such a nonpayment, anywhere in the country, would be required to litigate that dispute within the highly complex MDL proceedings already underway here vastly expands the scope of the current MDL, and does not serve the interests of justice or efficiency for the insurance companies who may be members of the putative defendant class.

Although Count VI of the *Lemke* Action may nominally arise from the Data Breach, this Panel has never suggested the automatic consolidation of "actions arising out of the same cyberattack" (Change Healthcare Opp'n at 6) without close review of the parties and issues present. If anything, the Panel decisions cited in the Oppositions make clear that consolidation here would be an aberration because claims like Count VI of the *Lemke* Action would (1) bring in numerous new parties—the potential health insurance company defendants—who would otherwise not be parties to any action in the MDL; (2) involve a universe of defendants who bear no alleged fault for the underlying event that led to this MDL (*i.e.*, the Data Breach) and (3) turn principally on central legal or factual issues not otherwise present in the MDL at all.

Indeed, the JPML decisions cited by Change Healthcare and the *Lemke* Plaintiffs make clear that the prototypical multi-defendant data breach MDL is where numerous defendants allegedly bear fault for causing or mishandling the data breach itself. For instance, in *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, the Panel found not only that the factual overlap between actions was "undisputed," but also that there were "nearly identical claims against defendants." No. MDL 3096, 2024 WL 436485, at *1 (J.P.M.L. Jan. 30, 2024).

Even where the Panel has combined data breach actions with distinct theories of liability, the relevant overlap was not some tangential issue of damages, but the culpability for the data breach itself. Thus, in *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, the Panel ordered consolidation of claims by (i) consumers whose data was compromised with

(ii) stockholders who alleged Marriott misled investors about its cyber security. 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019). Both actions thus implicated Marriott's allegedly longstanding failure to address vulnerabilities in its cyber security. The Panel observed that Marriott's culpability for allegedly misleading investors, and for allegedly failing to protect consumer data, would implicate "overlapping factual issues and discovery relating to, inter alia, what Marriott knew about the security of [the relevant] guest reservation database," and that these issues "likely will be central to both the securities action and the consumer class actions." *Id.* at 1374.

Likewise, the Panel decision in *In re American Medical Collection Agency, Inc., Customer Data Sec. Breach Litig.*, 410 F. Supp. 3d 1350 (J.P.M.L. 2019) made clear that all of the defendants in the resulting MDL were being blamed for the underlying data breach. *Id.* Specifically, the laboratory defendants in that action were alleged to be contributorily at fault for a collection agency's data breach because they had negligently entrusted the agency with the plaintiff patients' personal data. *Id.* Even in such cases, consolidation is far from automatic. In *In re KeyBank Customer Data Sec. Breach Litig.*, 655 F. Supp. 3d 1372, 1373 (J.P.M.L. 2023), also cited by Change Healthcare, the Panel consolidated a group of actions asserting negligence on the part of a company—OSC—for a data breach. *Id.* However, the Panel declined to resolve the consolidation question for actions brought by plaintiffs against several financial institutions for negligent entrustment of their data to OSC, leaving it for the conditional certification process. *Id.*

The Panel has never held that cases nominally involving the same data breach should be consolidated reflexively, even where it introduces new parties to the MDL who face entirely distinct theories of liability, with no legal stake in the underlying cyber security issues. The Panel's past decisions illustrate that Change Healthcare and the *Lemke* Plaintiffs are championing an abnormally expansive view of consolidation. The Count VI claim is not "nearly identical" to

claims found in the Change Healthcare MDL. It has nothing to do with alleged fault for the Data Breach, and is concerned only with the indirect, downstream effects on the payor-payee relationship between providers and health insurance companies.

Finally, the argument that the Panel lacks authority to sever and remand Count VI of the *Lemke* Action because it is "indivisible" is plainly incorrect. (Change Healthcare Opp'n at 5–6; *Lemke* Pl. Opp'n at 9–10.) Count VI is facially divisible from the rest of the SAC. Indeed, the allegations against Healthfirst and the putative defendant-insurer class are completely separate from those against Change Healthcare. (*See Lemke* SAC ¶¶ 101–114.) Count VI involves a separate plaintiff class and a separate defendant class from the rest of the *Lemke* Action.[2] (*Id.*) The Panel plainly has the authority to "separate any claim, cross-claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded." 28 U.S.C. § 1407(a).

## II. THERE WILL BE NO PRACTICAL EFFICIENCY IN DISCOVERY FROM EXPANDING THIS MDL TO INCLUDE PROVIDER LAWSUITS AGAINST INSURANCE COMPANIES

Consolidation of Count VI does not serve the convenience of the parties or witnesses because any overlap in discovery is extremely minimal, if not non-existent. While the *Lemke* Plaintiffs argue that "[t]he dates the Change Healthcare Defendants' systems went down, and when the systems became fully restored are key factual questions shared by Count VI and the MDL" (*Lemke* Pl. Opp'n at 7), these are, at best, ancillary factual issues, potentially relevant only to

---

[2] There is no basis to speculate that the Change Healthcare entities could be a member of the "stale" claims defendant class. Such a defendant class has not been certified, and this Panel need not overlook the fact that the certification of a "defendant class" is exceptionally rare. For all the providers who have sued Change Healthcare and its affiliate United Healthcare, it is noteworthy that, on this motion, Change Healthcare and the *Lemke* Plaintiffs do not cite any complaint in the MDL in which United Healthcare, in its capacity as a health insurer, is alleged to have rejected providers' bills as untimely due the service outage caused by the Data Breach.

damages. Likewise, any facts concerning when any insurance companies were notified of the breach (*id.*) are certainly not "key" to Count VI and, in any event, are facts likely within the possession of the insurance companies themselves.

Discovery in Count VI of the *Lemke* Action will focus on the individual claim processing practices of defendant insurance companies, including as relevant to any potential obligation to suspend billing deadlines in light of Change Healthcare's service interruption. This is distinct from the discovery necessary for the MDL described in the Transfer Order, which "will focus on how Change Healthcare's system was breached, what security measures Change Healthcare had in place, and the measures taken after the data breach was discovered to notify those impacted and to restore healthcare providers' access to insurance and other information stored in the Change Healthcare platform." (Transfer Order at 2.)

Taking into account the sweeping complexity of the MDL as relates to fault for the Data Breach, any overlap in discovery here with other health insurers would be minimal at best. Again, neither Change Healthcare nor the *Lemke* Plaintiffs explain why informal arrangements or the ordinary tools under the Federal Rules of Civil Procedure are insufficient to ensure coordination and avoid any duplication of resources or efforts. *See In re Coll. Athlete Comp. Antitrust Litig.*, No. MDL 3105, 2024 WL 1597524, at *1 (J.P.M.L. Apr. 11, 2024). Presumably, it will be the existing parties to the MDL who will issue Rule 45 subpoenas to individual insurance companies. The existing MDL thus provides a venue for coordinating such non-party discovery, with no need to transplant separate payor-provider lawsuits into this MDL. And even if the requested consolidation occurred, it would not eliminate the potential need for discovery from health insurance companies who did not happen to be named as parties. In terms of facilitating discovery,

any benefit from expanding this MDL to include Count VI of the *Lemke* Action would be minimal and spotty at best.

## III. THERE IS NO RISK OF INCONSISTENT RULINGS ON MOTIONS BETWEEN COUNT VI AND THE MDL

The potential inconsistent rulings predicted by Change Healthcare do not take account of the distinct legal focus of Count VI of the *Lemke* Action. Change Healthcare baldly posits that separation of Count VI risks the possibility of inconsistent rulings on discovery, class certification, *Daubert*, summary judgment, attorney-client privilege, and work product privilege. (Change Healthcare Opp'n at 10.) These are red herrings. The most obvious discovery to be coordinated will be that sought by the existing MDL parties from non-party health insurance companies—an exercise that will be carried out through the MDL even if this motion to vacate is granted. There is no obvious risk of inconsistent class certification rulings, as Count VI of the *Lemke* Action involves a different theory of liability, with unique classes of plaintiffs and defendants, which are defined separately in the *Lemke* SAC. *Daubert* rulings are hard to fathom as being "inconsistent" here. There are no obvious subjects of expert testimony common both to Count VI of the *Lemke* Action and to the MDL's existing actions. The notion of inconsistent summary judgment rulings—when Count VI rests on a unique legal theory against a different group of defendants—is entirely speculative. Payor-provider disputes are routine in the healthcare industry. There is no need for this MDL to capture every such dispute that has any conceivable connection to the Change Healthcare Data Breach.

## <u>CONCLUSION</u>

For the afore-mentioned reasons, Healthfirst's motion to vacate CTO-1 should be granted and Count VI of the *Lemke* Action should be severed and remanded to the district court for further

proceedings. *See In re: IntraMTA Switched Access Charges Litig.*, 67 F. Supp. 3d 1378, 1380 (J.P.M.L. 2014).

Dated: New York, New York
July 30, 2024

SHER TREMONTE LLP

*/s/ Kimo S. Peulso*
Kimo S. Peluso
Courtney Gans
90 Broad Street, 23rd Floor
New York, New York 10004
Tel: 212.202.2600
kpeluso@shertremonte.com
cgans@shertremonte.com

*Attorneys for Defendant Healthfirst, Inc.*